IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16CV309-GCM

| | | |
|---|---|---|
| DANNIE MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| THE ANSON COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Defendant's Motion for Attorney's Fees, filed March 29, 2018. This motion has been fully briefed and is ripe for disposition.

**FACTUAL BACKGROUND**

Plaintiff, then a career teacher employed by the Defendant Board, filed suit against the Board in June of 2016 asserting claims for alleged violation of her First Amendment rights and discriminatory failure to promote on the basis of her race and age. (Doc. No. 1). Following dismissal of her First Amendment claim, Plaintiff filed an Amended Complaint (Doc. No. 14), which asserted in sweeping terms that the Board had passed her over for a series of promotions on more than a dozen occasions, usually in favor of younger and/or white candidates, but identified only three specific promotions she sought but did not receive in 2014. From the outset of discovery in this matter, Plaintiff has been indifferent at best to the obligations she undertook as a litigant, the requirements of the Rules of Civil Procedure, and the instructions of this Court.

Plaintiff took no depositions and served only one set of written discovery in the Board. When Plaintiff finally produced complete responses to the Board's discovery requests, it became

1

even more clear that she would be able to adduce no evidence of discriminatory failure to promote. Plaintiff submitted no affidavits, and pointed to no documents suggesting, let alone establishing, that her age or race played any part in any of the challenged promotion decisions. In fact, Plaintiff admitted under oath that she was unqualified for (at least) the first of the three promotions she cited because she lacked a principal licensure. *See* Montgomery Deposition, Doc. No. 61-1 pp. 45-47, 50-51, 57-59, 66-67, 81. As to the other two promotions, Plaintiff came forward with no evidence whatsoever to dispute the Affidavit of Superintendent Michael Freeman that, for both promotions, he considered Ms. Montgomery's application but ultimately recommended the candidates that he determined to be the most qualified. The Superintendent's Affidavit affirmed that he did not make any of the challenged promotion decisions on the basis of Ms. Montgomery's age or race. *See* Affidavit of Michael H. Freeman, Doc. No. 59, ¶¶ 16-17, 20-23.

On January 30, 2018, the Board moved for summary judgment on Plaintiff's discrimination claims. (Doc. Nos. 60, 61). In an Order dated March 19, 2018 this Court granted the Board's Motion for Summary Judgment and dismissed Plaintiff's claims in their entirety. (Doc. No. 68). The Court found that Plaintiff had "adduced no direct evidence of discrimination in the Board's promotion decision[s]." *Id.* at p. 4. Given Plaintiff's concession that she was unqualified for the first of the three challenged promotion decisions (*id.*) and the Board's articulation of a legitimate, non-discriminatory reason—the superior qualifications of other candidates— for the other two, the burden rested with Plaintiff to come forward with affirmative evidence of discrimination. She had none. *Id.* at pp. 4-5.

As the Court's March 19 Order noted, Ms. Montgomery failed to adduce any evidence of discrimination in the Board's promotion decisions but instead offered only her own "positive

self-assessment," coupled with her wholly "subjective and speculative belief that she was discriminated against." *Id*. pp. 5-6. The Court accordingly granted summary judgment to the Board.

**DISCUSSION**

Under 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). 42 U.S.C. § 2000e-5(k) is to similar effect: "In any action or proceeding under this subchapter [42 USCS §§ 2000e *et seq*.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . ." The Fourth Circuit has confirmed that "[t]he standard for granting attorney's fees under 42 U.S.C. § 1988 is identical to that under Title VII." *Martin v. Cavalier Hotel Corp*., 48 F.3d 1343, 1359 n.10 (4th Cir. 1995) (citing cases).

Although the statutory language is facially neutral between plaintiffs and defendants, the Supreme Court has clarified that prevailing defendants should receive attorneys' fees only when the plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *see also*, *e.g.*, *Introcaso v. Cunningham*, 857 F.2d 965, 967 (4th Cir. 1988). *Christiansburg*'s distinction between plaintiffs and defendants arises out of a concern for chilling potentially meritorious civil rights claims. However, "[w]hen a court imposes fees on a plaintiff who has pressed a 'frivolous' claim, it chills nothing that is worth encouraging." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (reversing district court's denial of fees).

3

In addition to its statutory authority for awarding fees, the Court may assess attorneys' fees under its inherent authority. The Court properly exercises its inherent authority to assess fees when a party or an attorney has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers v. NASCO, Inc*., 501 U.S. 32, 45 (1991). "The bad faith exception for the award of attorneys' fees is not restricted to cases where the action is filed in bad faith. [B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980).

Plaintiffs and their attorneys are obligated to confirm that sufficient factual bases for a claim exist before filing a lawsuit. Plaintiff's initial attempt barely survived dismissal: This Court dismissed her First Amendment claim altogether and allowed her to file an Amended Complaint to add the necessary specificity to her sweeping claims of discrimination. (Doc. No. 13). In response, Plaintiff pointed to three principal or assistant principal promotions for which she applied but was not selected in 2014 (Doc. No. 14 ¶¶ 14- 16).

Plaintiff and her counsel should have acknowledged that her claims were groundless from the outset—particularly as to the promotion(s) for which Plaintiff herself conceded she was unqualified. Indeed, in her deposition in May 2017 Plaintiff conceded under oath that she was flatly unqualified for the first of the three positions she identified in her Amended Complaint, and she even conceded that she had not met the qualifications at the time she applied for the second. (Doc. No. 61-1, pp. 57-59); *see also id*. pp. 66-67 (conceding that she was not qualified for the Anson County Early College Principal or Anson High School Assistant Principal positions); *id*. p. 81 (admitting that "for the positions prior to 2014," Plaintiff did not "know if [she was] actually qualified for the position").

With respect to her remaining claim(s), Plaintiff fared no better, because she concededly had no proof whatsoever that any of the Board's promotion decisions were based her age or race. From the outset of this litigation through her opposition to the Board's summary judgment motion, Plaintiff consistently pointed to nothing other than her own subjective belief and speculation that the Board's promotion decisions must have reflected unlawful discrimination, because Ms. Montgomery was certain that she must have been the superior candidate in every instance:

> It is my position . . . that based on my experience and my qualifications, that younger and mostly white individuals were selected for assistant principal and principal positions for which I applied, and in each of these situations my qualifications and experience could not have been the lesser, and in each of these I do believe that race and age paid—played a part in the selection process for those reasons.

*Id*. at p. 14; s*ee also id*. at p. 7 (asserting her "belie[f]" that her qualifications and experience were better than those of the candidates to whom administrative positions were awarded); *id*. at p. 13 (declaring that Plaintiff "cannot believe that in each of these [promotion] situations that was the best choice"); *id*. at p. 22 ("I'm saying that [Anson County Schools Superintendent Michael] Freeman selected individuals that could not have been mostly— that could not have been more qualified than I for many of those positions."). Plaintiff adhered to that view throughout the litigation, notwithstanding her conceded lack of information about the qualifications of other candidates:

> Q. . . . [W]ell, let me ask you this: What was Kevin Adams' education?
> A. I'm not for sure.
> Q. Well, do you--?
> A. You-all have that in your records. I don't have it to compare.
> Q. Well, is it your position that you were better qualified than Mr. Adams?
> A. I believe that given my age and experience and background that, yes, my qualifications would have been equal or better.

5

Q. Well, if you think your qualifications were equal or better—

A. Well, I won't say equal. I – I will say that my qualifications were better.

Q. Okay. So if Mr. – if your qualifications were better than Mr. Adams', then I assume you know what Mr. Adams' qualifications are. Is that correct?

A. No, I do not.

Q. Then how do you know that your qualifications are better than his?

A. Given my background, years of experience, age, and qualifications, I believe that my qualifications are – were superior.

Q. Okay. But you don't know what his qualifications are, do you?

A. No, I don't.

*Id*. at pp. 69-70. Ms. Montgomery's "belief" in her superior qualifications, and her conclusion that the selection of other candidates reflected discrimination in every instance, was not predicated on any evidence of discrimination:

Q. Ms. Montgomery, do you have any evidence that your failure to get either assistant principal or principal positions was based upon either rage [sic] or ace – age discrimination?

A. All I have is my qualifications and the candidates that were selected.

Q. Do you know the actual qualifications of any of the candidates who got the jobs?

A. I don't know all of – not – no, I don't. What I do know is that quite a few of them come directly out of the classroom, and whenever I came to the school system, I already had credentials that would put me – that would put my qualifications up there.

*Id*. at p. 226.

At the end of the day, the Board prevailed on its summary judgment motion precisely because Plaintiff could point to no evidence of discrimination at all—and, in fact, Ms. Montgomery made almost no effort throughout the litigation to obtain and evaluate evidence relevant to her claims. She served a single set of written discovery on the Board, took no depositions, and offered no affidavits or documentary evidence suggestive of discrimination. From the filing of her original Complaint through her response to the Board's summary judgment motion, Plaintiff stubbornly insisted that she had been the victim of discrimination,

even when not a single fact, witness, or document supported her theory. *Cf. Hutchinson*, 994 F.2d at 1080 (finding award of fees appropriate where "plaintiffs' § 1983 claim had no basis in fact" and "plaintiffs were unable to back their conspiracy theory with anything beyond conjecture and speculation"); *Introcaso*, 857 F.2d at 968 (finding no abuse of discretion in fee award where wrongful discharge plaintiff "knew or should have known that his suit was groundless").

If Plaintiff's lack of even a scintilla of evidence were not enough, the Court need only look to the unnecessarily protracted course of this litigation. On the basis of nothing more than her belief in her own "superior" qualifications, Plaintiff pressed her claims against the Board for many months. During that time, the Board shouldered the significant costs and burdens of this litigation, which was characterized from the beginning by Plaintiff's stubborn refusal to respond to discovery requests, adhere to the governing Rules, or abide by the Orders of this Court. The docket in this matter makes the point: The Board has been required to seek this Court's intervention to obtain the most basic of discovery responses and compliance with deadlines set by the Rules and this Court's Orders. Plaintiff's indifference to her obligations as a litigant is apparent. Such "bad faith in the conduct of the litigation" itself supports an exercise of this Court's authority to award fees. *Roadway Express*, 447 U.S. at 766.

Once it is determined that an award of legal fees and costs is appropriate, the Court undertakes a multi-step analysis to determine the amount of fees to be awarded. *See Doe v. Kidd*, 656 Fed. Appx. 643, 652 (4th Cir. 2016). First, the Court must ascertain what constitutes a reasonable fee for the services performed related to the matter. The Court accomplishes that task by multiplying the number of hours reasonably expended on the case by a reasonable or customary hourly rate (determined in light of the several factors set forth in *Johnson v. Georgia*

*Highway Express Inc.*, 488 F.2d 714, 715-19 (5th Cir. 1974)). *See Kidd*, 656 Fed. Appx. at 652. Once that amount is established, the Court may make adjustments in light of mitigating factors, including the plaintiff's ability to pay. *Chaplin v. Du Pont Advance Fiber Sys.*, 303 F. Supp. 2d 766, 775 (E.D. Va. 2004).

The Defendant has filed the Declaration of Robert J. King III, counsel for the Board, which sets forth the fees incurred by the Board in defending this case in the amount of $100,836.75. (Doc. No. 72). After carefully reviewing the Declaration and attached exhibits, the Court finds the hours expended to be reasonable, especially in light of the fact that that Plaintiff's conduct throughout this litigation, including her failure to provide complete discovery responses, necessitated that counsel spend additional time, including filing motions to compel and to dismiss. Moreover, the rates charged are reasonable, and the Board's counsel applied a significant discount to these already-reasonable rates. After reviewing the fee in light of the *Johnson* factors, the court finds no reason to adjust the fee.

The Court next weighs these fees against Plaintiff's ability to pay. The Plaintiff was directed by the Court to file a Declaration under penalty of perjury stating her financial condition, including assets, liabilities, income and expenses. In response, the Plaintiff filed a document titled "Plaintiff's Financial Condition" in which she "respectfully declines the court's request to produce and publish Plaintiff's financial condition." In light of Plaintiff's refusal to provide any information regarding her ability to pay, the Court is therefore left with no choice but to award the full amount of fees and expenses requested by the Defendant.

Ms. Montgomery levelled serious accusations of discrimination against the Board when she should have known that her allegations were baseless. She continued to pursue those claims long after their lack of foundation became clear. When litigants alleging discrimination pursue

groundless or frivolous claims, they devalue the claims of individuals who have suffered true injury, impose unwarranted costs on the federal judicial system and innocent defendants, and contribute to overcrowded dockets. Plaintiff's claims in this litigation were vexatious and irresponsible from the outset, imposing substantial costs and burdens on the Board and this Court. That behavior must be deterred. Accordingly,

IT IS THEREFORE ORDERED that Defendant's Motion for Attorney's Fees is hereby GRANTED, and Plaintiff is directed to pay to the Defendant its fees and expenses incurred in defending this lawsuit in the total amount of $100,836.75. This Order supplants the Court's Orders of January 11 and 29, 2018 awarding Defendant's fees in pursuing its Motion to Compel. (Doc. Nos. 56 & 58).

Signed: June 20, 2018

Graham C. Mullen
United States District Judge